I'd like to focus on the issue that really is the focus of my reply brief, which is the evidentiary issue under Rules 403 and 404. This case is a tax case, of course, and many of the facts are undisputed. There are very few disputed facts. I mean, he stipulated below, through Pro Se and through his counsel, that he didn't file tax returns on the years in question, that he had the income on the years in question, and then, in fact, that he was going to owe the taxes for the years in question. So really, this is a pure mens rea case. The only issue that went to the jury was whether or not he believed some of these sort of sovereign citizen arguments, these tax protester arguments that he raised, whether that was good faith belief, whether he got these, you know, it was clear from the record he'd gone to a lot of seminars, this thing is out on the Internet, and whether or not he embraced that, or was he just being opportunistic and avoiding his tax obligations. That was the issue that went to the jury, and what happened was, early in the case, is the government introduced, injected his child support arrearages. They introduced three exhibits, 40-1, 40-2, 40-3. They're all in a row on pages 1202 through 1241 of the record, volume three, and there was an objection from his counsel. She objected to relevance. That's clearly a 403, 404 objection. Judge Moon recognized that as an objection. He held it. He objected to one of the exhibits, but not the other two. That is, she didn't object explicitly to the other two. She objected explicitly to 40-1, but Judge Moon weighed the probative value of the first exhibit, as opposed to its prejudicial value, and ended up saying he thinks it's more probative than prejudicial, so he let it in. So there was a definitive ruling from Judge Moon. I think under Rule 103, she had no obligation to renew that objection, since he had so definitively ruled upon it. Well, but he restricted his objection to relevance. He didn't say anything about prejudice. Oh, he did, Your Honor. Respectfully, I'd ask the court to look at 306 and 307. He said it's definitely got some prejudicial value. Who? The lawyer for this man said this? No. You're right. Judge Moon did. Yeah, well. Judge Moon did. I'm looking at the objection, not wanting to leave a paper trail. Ms. Johnson also, I'm sorry, she said, I object to the relevance. The legal obligations she charged with failing to comply with his tax obligations are not any child support obligations. So I think the relevance, if any, is minimal. Correct. I wasn't there. So I understand. All right. But you know how it is. When you take a case over on appeal, for good or for ill, you take the record. And I think this one is for good, Judge, because under Rule 103, she's supposed to be specific. But if the context is clear, then it's clear. I think it is clear. And he's making a relevancy argument. But I think the judge recognized that he needed to weigh relevance versus prejudice, which is a standard motion. And I think Judge Moon did that. He undertook the proper test. So the fact that she didn't say the magic word, Rule 404, the magic word prejudice, really shouldn't matter. He undertook the proper test. I just think he got it wrong. And so there's four considerations under Rules 403 and 404, reliability, necessity, relevance, and absence of undue prejudice. I'll concede that the documents, these exhibits are reliable. But as far as relevance, they weren't. This was not a case about his child support arrearages. It was a case about his tax obligations and his tax relevance. No, but you told us a little earlier in your argument, the question was that we were supposed to look at his sincerity. And I think that they're relevant to go to his sincerity in meeting his obligation, whether they be tax obligations or child support obligations. Well, Your Honor, I think in the last couple of years, though, the court has really focused, and there are two cases that I really focused on in the briefs, McBride from 2012 and then Chief Judge Traxler's opinion in April of 13 in the Moore case. And just briefly, the focus in those cases under the relevance prong is how similar in nature and purpose is the charged act with the uncharged act. For example, in the McBride case, the defendant was charged with distributing cocaine powder. The district court allowed in evidence he distributed cocaine base or crack. Those are certainly similar, but this court said not sufficiently similar, not exceedingly similar, and they reversed his conviction. And in the Moore case, written by Chief Judge Traxler, the allegation, the charge was he used a revolver in a carjacking. And the district court judge allowed in evidence that he not only possessed a revolver prior to the carjacking, but also a semi-automatic pistol. Now, those two items certainly have some general superficial similarity, a revolver and a pistol, but the court said insufficient, not exceedingly similar. But most importantly, even if I'm wrong about that, Judge, and there's some relevance to the child support exhibits, they weren't necessary. And I think that is the biggest problem here. There's, I, oh, I think that it's almost impossible to say that something is not necessary in a criminal conviction because we give the government so much opportunity. We are not second-guessing Assistant United States Attorneys on piling on evidence. I mean, I quite agree that they shouldn't do it, but they don't know when they're trying the case how much is piling on, how much is necessary to convict, and how much isn't, and so courts have just made the call. I mean, we have two former United States Attorneys here, and they can probably speak to that issue better than I can, but I don't remember a case that I've sat on in 20 years in which we've ever held that evidence is not necessary. Well, I appreciate that, Judge. I would ask the court just to consider one of the... You might make some history then. Yeah, that's right, that's right. First impression here. But there's a case called Wilson, I believe, that's cited in my brief, and they said it doesn't meet the necessity prong. It was 2010, published by this court. It doesn't meet the necessity prong. If it doesn't meet the necessity prong... So what was the facts there? Judge, you caught me there. It was a drive-by shooting case. It had nothing to do with taxes. It was a violent crime case, and it was introduced some evidence that was not charged. But the holding was, since we find it wasn't necessary, we don't even need to look at the other prongs. Who wrote that opinion? I'm sorry? The judge was on it. Probably I wrote that. I believe it's Wilson, Judge, and I don't remember. I'm sorry. Wilson, I've got your site here. You don't remember who the panelists were? No, sir, I'm sorry. I apologize. There's no argument in their brief that it's essential that I can find. Maybe Ms. Bagley will educate me on that, but I can't see it. The essential is not the necessary. You do recognize that. I respectfully disagree, Judge. I think that necessary in this context has been held to mean essential to the government's case. It has to be essential. It can't just be sort of vaguely, you know, might be relevant, might be... It has to be essential. No, no, no, but you're focusing on the wrong thing. In other words, if it goes too... Well, I think I understand your argument. No point in reading it. Well, Judge, let me just say this. The third prong is the undue prejudice prong, so even if I were wrong, if there's some relevance, even if there's some necessity, certainly this was highly prejudicial. I mean, he's being branded as a deadbeat father who's scheming to avoid his tax obligations. I can't... I mean, that's pretty prejudicial. I think the average juror would be very put off by that, and I think they were. Finally, the government has raised harmless error, and I'd like to just highlight a couple of points on that. I think there are three decisive factors there. The centrality of the issue affected by the error. I think here they say that this, by their own... They say this goes to his mens rea, so there's no question it affects the central issue in the case. And secondly is the mitigating efforts the district court undertook, meaning a limiting instruction. There was no limiting instruction when he let in this child support a rearage evidence at all, so there was no mitigation. Was one asked for? No, Your Honor, there was not. It was not. And I don't... And again, I don't think the onus is on... I don't think that is part of the... You usually get a limiting instruction on 404B stuff if you ask for it. Right, but this court has not said that defense counsel needs to ask for it. What the court has said in McBride and more in these recent cases is, did the district court mitigate by undertaking a... by delivering a limiting instruction? The case has got to be tried. I mean, that's what they rely on the lawyers for. Yes, Your Honor. They don't like it if they ask for a limiting instruction. If you're going to let it in after the judge says he's going to let it in, then you try to limit it. Or if you're going to let it in, you better tell the jury not to consider it for anything, except it's very narrow stuff. Yes, Your Honor. But I would just respectfully ask the court to consider the more... Otherwise, we review it for plain error. So we'd review this claim for plain error if you're raising it as a freestanding claim. And I don't think it should be reviewed for plain error. I addressed that in the beginning. I think that lawyer made it clear to Judge Moon, who knows Rule 403 and 404 as well as anybody, that that's the objection. He understood that was the objection and he undertook the balancing test. But under these cases, I've cited more in McBride. They never... The court has never said... It has never required defense counsel or appellate counsel to demonstrate that defense counsel asked for a limiting instruction. The question under this recent test, this three-part test, this is the case I'm referring to as IvoCivic. It's a Bosnian name. That would certainly be part of the argument that when you say, come up here and say you didn't get one, that you didn't ask for it. Right. But I'm not... That's not really... The question is, can they prove it was harmless error if it was error? And under that analysis, the question is... Can they prove it's harmless error? No, you have to show it's plain error. You don't ask for something and then come up here and say it was wrong. I think the... Judge, respectfully, I think the burden is on the government, if there's error, to prove... Well, a harmlessness. Harmless. You're saying it was error not to give the instruction that you didn't ask for. But then, on the harmless error point, the admission of it, that's what you're saying. The government now says, well, if it is error, it's harmless, right? Government is saying if it is error, it's harmless. That supports your proposition that it wasn't necessary. That's right. But they've got the government talking out of both sides of its mouth on that point. Well, I don't think they're doing any mischaracterizing. They're not being all that consistent, perhaps. But, Judge... They do it as a what if. They're arguing the alternative. But I think, under the harmless error analysis, the question is, was the limiting instruction given by the district court? That's the end of that factor. And then the third is the closeness of the case. And, of course, they say the case was overwhelming. We don't look at the cold appellate record. What did the jury think of this case? I mean, there was one issue. They took a little over two hours and they asked a question. They actually asked to see the statutes. They didn't want to just rely upon Judge Moon's oral summary. They actually sent a note out asking to see the statutes. And under the Ivy Civic case that's cited from 2012, which sets out this three-part test for harmless error, a request from the jury for guidance... Do you remember how long the jury was out in Ivy Civic? Four hours. And do you remember what the issues were there? Not enough to articulate them, Judge. I remember. I think it was the Travel Act. Is that right? It was the Travel Act. So... And a person who didn't speak English very well. Yes. Right, right. Different facts, right. But the fact that the jury sent out a question to ask for more guidance was indicia that the jury was struggling with the case, which is what we have here. If there are no further questions, this concludes appellant's argument. Thank you very much. Thank you. Ms. Bagley? May it please the court, Katie Bagley, on behalf of the United States. I'd like to start by addressing the standard of review in this case. As the court has suggested, this case should be reviewed for plain error. The defendant clearly objected only on the grounds of relevance. Judge Moon took it upon himself to consider whether the prejudicial nature of the evidence might outweigh its probative value under 403. Absolutely no indication was given by defense counsel that they were making any kind of 404B objection. They didn't say 404B. They didn't say bad acts. They didn't say propensity. They didn't say anything to indicate to the judge that that was the grounds of their objection. Well, included within 403 is a balancing test. And included within that is possible prejudice, right? That's correct, and Judge Moon did... So they did make a... In their 403 objection, they did bring into play whether there would be prejudice. Well, actually, I think... I think actually the objection did not reference 403. No, the objection didn't, but I thought that you said at the beginning of your argument that they made a 403 argument. They did not. Judge Moon did. When the... I understand that you said that he brought into play all this analysis, but when they said it's not relevant, they clearly were pointing us to 403, right? I disagree with that characterization. Well, where else would you go for it? High in the sky? I mean, 403 is what tells you what you have to do, right? That's correct. The objection from counsel was purely on the grounds of relevance. I understand that, but... Objection is 403. Not in this case, Your Honor. What's the rule that applies then? That irrelevant evidence... If they say they object on the basis of relevance and you pick up the rule book... To find out whether they're right or not, where do you go? What rule do you go to? I believe it's 401, but now I'm terrified of being quoted on that. It's 403. 403. I'm sorry. So they objected on the grounds of relevance. Judge Moon, I'll try to be more clear, then considered the question of prejudice. Defense counsel did not suggest that the evidence was prejudicial, merely that it was so far afield. To be sure, he didn't. But when you make a 403 objection, one of the things you consider is prejudice. Correct. They didn't make a separate prejudice? They did not. And I think what defense counsel is doing is conflating a 403 analysis with 404. And saying that because Judge Moon considered prejudice, he therefore somehow considered whether the evidence was admissible under Rule 404B. And that never happened. Nobody in this case evaluated the evidence under that standard. Well, I think if evidence... I haven't seen a case where something was not prejudicial under 403 but was under 404. Maybe such cases exist. No, I think... In any event, you go forward with your argument. He made the objection he did. He didn't object to the other two things. That's correct. And we think that the district court reached the appropriate conclusion with respect to the evidence in terms of its prejudicial versus probative value. What Judge Moon never considered because he was never asked to consider was any of the other factors under 404B. Which, I think, in this case then, this court is evaluating whether Judge Moon abused his discretion in admitting 401... Excuse me, Exhibit 40-1 under Rule 403 which we think he did not and certainly district courts are given great latitude in making that kind of analysis. So you would go through the four-factor test under 403, right? That's correct. And... How would that go? I think in this case, first of all, the evidence is relevant. The defense counsel cites McBride and Moore and suggests that they somehow indicate that the acts must be very, very similar. What McBride and Moore say is the unsurprising restatement of what this court said in the Touchstone case in Queen which is that evidence can be similar in terms of intent, state of mind, in this case the legal theories that the defendant was asserting to support his claim that he didn't have to pay taxes. All of those things were similar and this evidence was relevant to show that the defendant did not really believe what he was saying, that he acted inconsistently with his asserted beliefs, that his beliefs were opportunistic and that he was not acting in good faith. Not paying child support is inconsistent with not paying taxes? The reasons he asserted in the documents that he sent to the state of Virginia and to the Winchester District Court. First of all, the documents that he sent to the Winchester Court explained that he was not responding because he was not a United States citizen, because the court had to do with the federal courts and arguments that he had about his relationship to the IRS and the federal courts. It doesn't make any sense. He was asked on cross-examination what the IRS or the federal government had to do with his state child support and he didn't have much of an answer. If you really believed what he was saying about the federal government and his obligation to pay taxes, it would be completely inapplicable to his obligation to pay child support. The fact is he was asserting these frivolous arguments in an attempt to impede the state courts in the same way that he was attempting to impede the IRS. Furthermore, the defendant testified and the evidence showed that he was no longer a United States citizen and he didn't have to pay child support. I suppose that was his argument but actually we don't think he made that argument. What he said was, frankly, a bunch of nonsensical statements that he sent to the state court that was very similar to what he sent to the IRS and the fact that he used those arguments to somehow respond to his obligation to pay child support showed that he didn't believe them but rather that he opportunistically wielded whatever theories he came across in order to avoid paying his legal obligations. He didn't believe that they were valid reasons not to pay his taxes. You're saying because he used these exact same reasons to pay child support where you wouldn't have the same problem. Exactly. It showed that he didn't really believe them. Furthermore, he rescinded his social security number at one point but then subsequently began using it again on these fictitious financial obligations that he sent both to the state of Virginia and to the IRS in an attempt to pay off other legal obligations including his mortgage. It certainly and that was charged as an act in the indictment as was the money order that he sent to the state of Virginia both of which relied on the same legal theory that there was some account at the Department of the Treasury that he could access by using his social security number and directing the IRS to offset some debt. I hesitate to attempt to explain it in any greater detail. Again, because he used the same legal theory to pay whatever. His taxes, his mortgage, his child support indicated that this really wasn't about his good faith beliefs about the tax system or his study of the tax code leading him to have these beliefs but rather he came across this at some seminar or some internet search and thought it sounded like a really good idea to get out of paying his debts and that's exactly what Judge Moon found that this evidence demonstrated that he was not acting in good faith that he did not believe what he said he believed and that it went directly to the central issue in this case. Additionally, I'd like to respond to the claim that this evidence wasn't necessary as this court has stated before necessary means that the evidence is probative of an essential claim or element of the offense. The defendant's intent in a tax case and whether or not he believed what he said he believed about the law was the issue in this case and the government had to prove He testified. That's correct. Yes, he did. I believe the trial lasted three days and on his cross-examination he made a number of frankly nonsensical statements consistent with other documents that he'd submitted to the government. I believe he was asked if he was James Bowers Johnson his response was, I am right now and he testified that he was not a resident of the United States and did not earn income in the United States despite the fact that he lived and worked in the state of Virginia. I think the probative value of this evidence was high because it went to show directly that he did not believe what he said he believed in good faith. I think the prejudicial value has been exaggerated by the defense in this case. Why do you fall back on harmless error? We don't think we need to. We don't think there was any error. But you do it in your brief. You do it in your brief. If you've got so much confidence in it and the evidence is overwhelming, why do you say harmless error? Why don't you just plant your feet and prove the case? We believe it was admissible. We believe it was properly admitted. But you still fall back on harmless error. As to the 404B claim that the evidence was improperly admitted under 404B our problem in this case is that Judge Moon never made the findings as to the 404B factors because he was never asked to and frankly rather than conducting that analysis finding the easiest way for this court to resolve this case. We don't think there was error. We assert directly that the evidence was properly admitted, that the defendants claim that it didn't meet the requirements for Rule 404B is incorrect. The evidence went directly to intent and there was no error in admitting it. I thought you said the 404B stuff was reviewed for plain error. That's correct. That's correct. If this court were to find, for example I guess we're trying to sort of cover all the bases. We don't think there was error. I think the evidence was admissible. To the extent there was error, it certainly wasn't plain error. This is a run-of-the-mill evidentiary dispute. Were this court to find that the defendant had somehow preserved his objection and evaluated it under harmless error? And found it to be error. And found it to be error. And you'd say the evidence is overwhelming and it's harmless. That's correct. I guess the confusion is that we responded to, we do think the defendant objected on the grounds of relevance and Judge Moon did conduct an analysis of the prejudicial value of the evidence. That is properly before this court on appeal. The district court made those findings. Anything beyond that would be reviewed only for plain error. I do think that the prejudicial effect of this, of the improper prejudice, I'm sorry, was exaggerated. The government did not paint the defendant as a deadbeat dad. It never referred to his, him in any of those terms. No government witness used any term like that. The government was very careful in this case to relate the child support documents directly to the defendant's state of mind with respect to his taxes. For example, in the second volume of the joint appendix at 603 during closing argument, the prosecutor says, how does he pay his social security number until he found another scheme that he could pay his child support, pay his back taxes. In other words, his use of his social security number demonstrated that he was inconsistent. I think that if the court looks at where the government actually referred to this, we'll see there was no attempt to paint the defendant as a terrible person or somebody who left his children deprived. The government was using this evidence specifically to show that the defendant acted inconsistently with his claimed beliefs and that he was not acting in good faith, that his study of the IRS code would not lead him to these beliefs or to that weight the actions that he took. Again, at 609, the prosecutor says Mr. Johnson testified about reading the code, but he couldn't tell me where in the code it says you can pay your child support with a fake money order. He couldn't tell me where in the code it says you can pay your mortgage with a fake promissory bond. He couldn't tell me where it related to state taxes or state courts. Again, this was not a case where the government was introducing this evidence to blackball the defendant and it wasn't used in that way. No inflammatory statements were made. Certainly, this case is simply not close. In Abishevich, which the defendant referred to, the jury requested a definition of reasonable doubt, which certainly suggests that the jury was struggling with guilt. In this case, they asked for the text of 26 U.S.C. 7212, the statute the defendant was charged with. On cross-examination, the defendant testified that he had read 26 U.S.C. 7212. The prosecutor mentioned that fact as evidence that the defendant was aware of his guilt. The jury deliberated for two hours, including lunch. This was not a close case. The defendant testified. Frankly, I think he hung himself in his own testimony, but there was other unrefuted evidence. I would point the court only to one particular piece. Within days of being contacted by the IRS about being audited, the defendant closed his Bank of America bank account and moved all his money to an anonymous warehouse bank, admitting that he did so in order to avoid creating a paper trail. Those are not the actions of a person who believes that they are in compliance with the law and who is attempting to satisfy their legal obligations in good faith. They are the actions of someone who knows perfectly well that what they are doing is illegal and is seeking to avoid getting caught. In closing, I would just say, of course, we think Judge Moon properly admitted the evidence, that it was highly probative of the defendant's intent. To the extent this court disagrees with us that there was any error, certainly does not rise to the level of harmless error, let alone plain error. If the court has no further questions, I'm happy to respond. Thanks very much. ... ... ... I'd like to make three points briefly on rebuttal. The first is, I want to go back again to this issue about did trial counsel sufficiently raise a 403 and 404 objection? I don't think we're giving the trial judge enough credit here. I think clearly Judge Moon understood the objection. He understood he needed to undertake the weighing of prejudicial effect versus probative value. The fact that the trial lawyer did not mention 404 or anything like that, I don't think that matters. She made it clear and I think from the context, we can see that Judge Moon recognized that's the objection. It was a 403, 404 objection. Do you have cases where ... ... ... ... ... ... Not... ...
judges: Diana Gribbon Motz, Robert B. King, Stephanie D. Thacker